UNITED STATES, Appellee

V.

Allen O. DOSS, Machinist's Mate First Class
U.S. Navy, Appellant

No. 01-0686

Crim. App. No. 99-1380

United States Court of Appeals for the Armed Forces

Argued January 23, 2002

Decided August 23, 2002

GIERKE, J., delivered the opinion of the Court, in which
EFFRON and BAKER, JJ., joined.  CRAWFORD, C.J., filed
an opinion concurring in part and dissenting in part.
SULLIVAN, S.J., filed a dissenting opinion.

Counsel

For Appellant:  Lieutenant Travis J. Owens, JAGC, USNR (argued).

For Appellee:  Lieutenant Ross W. Weiland, JAGC, USNR (argued);
    Colonel Rose M. Favors, USMC (on brief).

Military Judge:  Moira D. Modzelewski

**This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of assault with a dangerous weapon and assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 USC § 928. The military judge also convicted appellant, contrary to his pleas, of soliciting another person to murder his wife, in violation of Article 134, UCMJ, 10 USC § 934.

The military judge sentenced appellant to a dishonorable discharge, confinement for eight years, total forfeitures, and reduction to the lowest enlisted grade. In accordance with a pretrial agreement, the convening authority approved the adjudged sentence but suspended all confinement in excess of five years for a period of ten years.

The Court of Criminal Appeals affirmed the findings in an unpublished decision. However, it held that appellant's trial defense counsel was ineffective during the sentencing hearing. Therefore, the court reassessed the sentence and affirmed "only such portion of the sentence as extends to a dishonorable discharge, confinement for seven years, reduction to E-1, and forfeiture of all pay and allowances." Unpub. op. at 16.

This Court granted review of the following issue:

WHETHER THE LOWER COURT ERRED IN REASSESSING APPELLANT'S SENTENCE IN THE ABSENCE OF A COMPLETE RECORD IN EXTENUATION AND MITIGATION OR BY FAILING TO APPLY THE PROPER STANDARD FOR SENTENCE REASSESSMENT TO REMEDY A TRIAL ERROR OF CONSTITUTIONAL MAGNITUDE. SEE UNITED STATES V. BOONE, 49 MJ 187, 195, AND 197-99 (1998).

For the reasons set out below, we set aside the sentence and authorize a sentence rehearing.

## Background

During the sentencing hearing, appellant made a lengthy unsworn statement that focused on his mental and emotional condition at the time of the offenses. On April 19, 1989, while he was assigned aboard the battleship USS IOWA, an ordnance explosion in a gun turret 30 feet from his work station killed 47 sailors inside the turret. Appellant's work area immediately filled with smoke. He ordered the eight sailors under his supervision to don emergency escape breathing devices and to evacuate their work area. He went to the burning turret and helped to extinguish the fire. When the fire was out, he was second in line to enter the turret. He entered the melted interior of the turret and began filling a canvas bag with body parts. He carried two bags of body parts to the ship's medical office.

Appellant knew ten of the sailors who were killed. On his second trip back from the medical office, he saw a friend's head fall from a body bag onto the deck. At that point, appellant "lost it." He was sent to his division officer's office, where he sat for about four hours. Psychiatrists were brought on board, but appellant did not have an opportunity to talk with them.

Two months after the explosion, appellant was transferred to recruiting duty in Oklahoma. Appellant told the military judge that he had a "nervous breakdown" in 1997, and he was ordered to seek medical treatment at Tinker Air Force Base. He was hospitalized for two days and then began seeing Major John

Atkins, a clinical social worker in the Substance Abuse Program, once a week.

Four months after being hospitalized at Tinker, appellant met his now ex-wife, and they were married a month later, in August 1997. His ex-wife testified that appellant accused her of infidelity, starting on their wedding night and continuing "just about every night and day" until they separated.

Shortly after his marriage, appellant was transferred from recruiting duty to the USS JOHN C. STENNIS, homeported in Norfolk, Virginia. He reported for duty on September 30, 1997, and the ship deployed 12 days later.

Appellant told the military judge that within days after his ship deployed, he began having panic attacks and thought about jumping overboard. He reported to the medical office, where he was kept under observation for three days, and was then evacuated to Portsmouth Naval Hospital, where he stayed for one night. He attended stress management classes for five days and began seeing Lieutenant (LT) J.C. Arguello, M.D., a Navy psychiatrist, once a month.

In November, 1997, while still under the out-patient care of LT Arguello, appellant assaulted his wife twice. One assault was committed by hitting his wife in the face and body with his fists, grabbing her by the throat, and throwing her against a wall. The other assault was by pointing a loaded rifle at her. This conduct was the basis for the two violations of Article 128 to which appellant pleaded guilty.

On January 4, 1998, at a truck stop, appellant asked a truck driver about the possibility of having his wife killed.

According to the truck driver's testimony, appellant asked how much it would cost to "take her out," and the truck driver told appellant, "Probably a couple of grand." Appellant gave the truck driver his name, military address, and a home telephone number. The truck driver reported the conversation to the Federal Bureau of Investigation in Oklahoma City. Appellant and the truck driver had no further discussions. This incident was the basis for the charge of soliciting another to murder his wife.

Shortly after the incident at the truck stop, appellant called his mother and told her what he had done. With her help, he checked into the medical facility at Barksdale Air Force Base on January 8, 1998, but he was sent to the Veteran's Hospital because there was no room at Barksdale. He remained in the Veteran's Hospital for five days, where he participated in "group sessions" and "one-on-one with the doctor."

On January 23, 1998, LT Arguello placed appellant on limited duty for six months. Appellant also began seeing a civilian pschologist, Dr. Thomas Pasquale, and continued to see him until his court-martial.

At trial, the defense presented no medical evidence other than appellant's unsworn statement during the sentencing hearing. Six days after appellant was sentenced, LT Arguello diagnosed him as suffering from post-traumatic stress disorder.

The Court of Criminal Appeals held that appellant's civilian defense counsel was ineffective during the sentencing hearing, based on his failure to present evidence of appellant's mental condition. The court considered 19 pages of medical records that

were attached to appellant's response to the staff judge advocate's recommendation. The court concluded "that no reasonable tactical purpose existed for not seeking to introduce the extant medical records at sentencing." Unpub. op. at 14-15. The court below reassessed the sentence and reduced the confinement from eight years to seven years, but it affirmed the dishonorable discharge, forfeitures, and reduction.

On appellant's motion, this Court admitted the sworn declaration of Dr. Jerry L. Brittain, a clinical psychologist and neuropsychologist. Dr. Brittain reviewed the 19 pages of medical records considered by the court below, and he noted that the medical records reflect 22 different and sometimes contradictory psychiatric diagnoses. He opined that a lay person or attorney would not know the meaning or significance of the numerous acronyms and medical jargon in the records. He opined that a lay person or attorney "could not fully understand how these diagnoses extenuate and mitigate MM1 Doss's criminal actions and how they bear on the possibility of rehabilitation." Finally, he pointed out that the records are incomplete. For example, there are references to Family Advocacy, hospitalization at Barksdale Air Force Base, and substance abuse evaluations, but no supporting documentation.

## Discussion

Appellant asserts that the court below improperly reassessed the sentence on the basis of an incomplete record and that it used the wrong standard for reassessment. The Government argues that the lower court erred in holding civilian defense counsel was ineffective, that the lower court used the correct standard

6

for reassessment, and that the record was adequate to permit reliable reassessment.

This Court will overturn the lower court's sentence reassessment only to "prevent obvious miscarriages of justice or abuses of discretion."  Boone, 49 MJ at 195, citing United State v. Jones, 39 MJ 315, 317 (CMA 1994), quoting United States v. Dukes, 5 MJ 71, 73 (CMA 1978).  Since the lower court's holding that civilian defense counsel was ineffective was not challenged by certification under Article 67(a)(2), UCMJ, 10 USC § 867(a)(2), and is not encompassed by the granted issue, we will not reexamine the lower court's holding in this regard.• Furthermore, in light of our holding that the lower court abused its discretion by reassessing the sentence on the basis of an inadequate record, we will not address the question whether the lower court applied the correct standard for reassessment.

In United States v. Sales, 22 MJ 305 (CMA 1986), this Court set out the rules for sentence reassessment by a Court of

---

• With respect to the dissenting portion of the Chief Judge's separate opinion, in United States v. Williams, 41 MJ 134, 135 n. 2 (CMA 1994), this Court recognized that the law-of-the-case doctrine does not preclude this Court from examining the legal ruling of a subordinate court in a case where the Judge Advocate General has not certified the issue.  However, we are reluctant to exercise this power and, as a rule, reserve it for those cases where the lower court's decision is "clearly erroneous and would work a manifest injustice" if the parties were bound by it.  See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1998), cited in Williams, supra.  In this case, the Government has not satisfied us that the lower court's holding was "clearly erroneous and would work a manifest injustice" if adopted for purposes of this case.  Accordingly, we will apply the law-of-the-case doctrine.

Criminal Appeals. If the court can determine that, absent the error, the sentence would have been at least of a certain magnitude, then it may cure the error by reassessing the sentence instead of ordering a sentence rehearing. Id. at 307. A sentence of that magnitude or less "will be free of the prejudicial effects of error." Id. at 308. If the error at trial was of constitutional magnitude, then the court must be satisfied beyond a reasonable doubt that its reassessment cured the error. Id. at 307. If the court "cannot reliably determine what sentence would have been imposed at the trial level if the error had not occurred," then a sentence rehearing is required. Id.

In Boone, supra, this Court held that defense counsel's ineffective representation during sentencing made it impossible to reliably reassess the sentence, because it was impossible to determine what evidence would have been presented by competent counsel. This Court explained:

> The record simply does not contain the evidence that the misfeasance of counsel caused to be omitted from the record. Therefore, there is no record from which the Court of Criminal Appeals, acting within its vast but circumscribed powers under Article 66(c), [UCMJ, 10 USC § 866(c),] can determine the sentence that the court-martial would have imposed . . . . Nor has Boone had the opportunity to develop fully his case in extenuation or in mitigation through the presentation of these witnesses or through the presentation of additional evidence . . . . In short, here, the record does not contain the evidence omitted by the constitutional error. Boone must have the opportunity to make the record that he did not have the opportunity to make because of the absence of the guiding hand of counsel.
>
> We stress the narrow confines of our holding. We intend no limitation on the power of the Courts of Criminal Appeals to reassess a sentence after other legal error has been identified . . . . Nor

> do we suggest that a remand for resentencing is
> necessary in all cases in which trial defense
> counsel was constitutionally inadequate . . . .
> Here we deal only with a situation in which the
> inadequacy of counsel has resulted in the omission
> of evidence that, under the standards of
> [Strickland v. Washington, 466 U.S. 668 (1984),]
> could have made a difference in the sentence
> imposed if it had been made a matter of record. In
> such instances, the Court of Criminal Appeals
> cannot reassess the sentence accurately, see Sales,
> 22 MJ at 308, because the record is not complete.

49 MJ at 198-99.

This case presents a situation similar to Boone. As Dr. Brittain's analysis suggests, the 19 pages of medical documentation may be only the tip of the iceberg. Furthermore, it appears that the significance of those 19 pages cannot be fully appreciated without expert testimony. It is impossible to determine what evidence a competent defense counsel would have presented. Thus, civilian defense counsel's omissions cannot be rendered harmless beyond a reasonable doubt by sentence reassessment. Accordingly, we hold that the court below abused its discretion by reassessing the sentence instead of ordering a rehearing.

## Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to findings but reversed as to sentence. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on the sentence may be ordered.

<u>United States v. Doss</u>, No. 01-0686/NA

CRAWFORD, Chief Judge (concurring in part and dissenting in part):

I believe that the Court of Criminal Appeals failed to use the correct standard for reassessing a sentence after finding an error of constitutional proportion. Nowhere did the Court state or show that it was satisfied, beyond a reasonable doubt, that its reassessment of appellant's sentence cured the constitutional error of ineffective assistance of counsel during the court-martial sentencing proceeding. See <u>United States v. Boone</u>, 49 MJ 187 (1998). The Court of Criminal Appeals also co-mingled the concepts of sentence reassessment and sentence appropriateness. Accordingly, this case should be returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals. If that court cannot be satisfied beyond a reasonable doubt that its sentence reassessment cures the ineffective assistance of counsel during sentencing, it must direct a sentence rehearing.

I do not agree with the majority that since the lower court's holding, that civilian defense counsel was ineffective, "was not challenged by certification under Article 67(a)(2)," ___ MJ at (7), we cannot reexamine that holding. As I said in <u>United States v. Grooters</u>:

> It may make sense to apply the law-of-the-case doctrine when there has not been a factual context to review, <u>Luce v. United States</u>, 469 U.S. 38, 105 S.Ct.

> 460, 83 L.Ed.2d 443 (1984), or when the issue has not been briefed by the parties.  However, it seems illogical to otherwise have an intermediate appellate court bind a higher appellate court.  New York Life Ins. Co. v. Hosbrook, 130 Ohio St. 101, 196 N.E. 888 (1935).

39 MJ 269, 274-75 (CMA 1994)(Crawford, J., concurring in the result).

The majority's view of the law of the case prohibits this Court from performing its statutorily intended purpose of overseeing the military justice system.  See United States v. Walker, No. 01-0762, ___ MJ ___, ___ (2002)(Sullivan, S.J., joined by Crawford, C.J., dissenting).  It makes no sense to require a certification by a Judge Advocate General in order to examine a legal ruling from a Court of Criminal Appeals.  "Once a case has been accepted for review by this Court, and the Government Appellate Division attacks the lower court ruling [as is the case at hand], that issue is placed squarely before us." United States v. Pablo, 53 MJ 356, 361 (2000)(Crawford, C.J., dissenting).  As we said in United States v. Williams, 41 MJ 134, 135 n.2 (CMA 1994):

> The law-of-the-case doctrine does not preclude this Court, once the case has been properly granted for review, from considering an erroneous conclusion of law made by the Court of Military Review.  See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817, 108 S. Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).

Although the majority finds that "[t]his case presents a situation similar to Boone," ___ MJ at (9), it is easily distinguishable. In Boone, the record of trial did not contain the evidence that caused the Army Court of Criminal Appeals to find counsel misfeasance. In fact, that record of trial was devoid of any extenuation and mitigation, except for Boone's unsworn statement. Since there was no record and, therefore, no evidence for the Court of Criminal Appeals to examine in the exercise of its powers under Article 66(c), Uniform Code of Military Justice (UCMJ), 10 USC § 866(c), this Court held that the lower court's reassessment of Boone's sentence was an abuse of discretion.

Unlike Boone, appellant had two non-commissioned officers (Chief Electrician's Mate Palmiere and Chief Machinist's Mate Norman), as well as his sister (Ms. Stewart), testify on his behalf during extenuation and mitigation. These witnesses bolstered appellant's story about the trauma he had suffered after the USS IOWA explosion. The information elicited from these witnesses makes the Court of Criminal Appeals's finding of ineffective assistance of counsel during sentencing suspect.

While the 19 pages of medical documentation submitted to the convening authority during the post-trial process may represent "the tip of the iceberg," ___ MJ at (9), the majority omits a crucial fact -- appellant refused to participate in a

sanity board, convened for his benefit, prior to the commencement of court-martial proceedings.

While, as the Court of Criminal Appeals points out, this refusal in and of itself would not have precluded introduction of any medical records into evidence during extenuation and mitigation, appellant's refusal to participate in the sanity board is further evidence that his counsel was not ineffective during the sentencing proceedings. This refusal to participate in the sanity board will undoubtedly test the credibility of defense evidence at any sentence rehearing. Despite the foregoing, I am not convinced that the lower court's ruling created a manifest injustice or was clearly erroneous. See Grooters, 39 MJ at 274 (Crawford, J., concurring in the result). Accordingly, I am not prepared to overturn the Court of Criminal Appeals's finding that civilian defense counsel was ineffective.

However, I am compelled to dissent from the majority's disposition -- returning this case directly for a sentence rehearing instead of returning it to the Judge Advocate General of the Navy for further review by the Court of Criminal Appeals.

The rules related to resentencing have been cogently set forth by the Supreme Court in Jackson v. Taylor, 353 U.S. 569 (1957); by this Court in United States v. Miller, 10 USCMA 296, 27 CMR 370 (1959)(interpreting Jackson); and thereafter in numerous cases from United States v. Suzuki, 20 MJ 248 (CMA

1985), through United States v. Eversole, 53 MJ 132 (2000).

First, sentence reassessment is the business of the Courts of

Criminal Appeals.

> Congress thought the board of review could modify
> sentences when appropriate more expeditiously, more
> intelligently, and more fairly.  Acting on a national
> basis the board of review can correct disparities in
> sentences and through its legally-trained personnel
> determine more appropriately the proper disposition
> to be made of the cases.  Congress must have known of
> the problems inherent in rehearing and review
> proceedings for the procedures were adopted largely
> from prior law.  It is not for us to question the
> judgement of the Congress in selecting the process it
> chose.

Jackson, 353 U.S. at 580.  This Court has adopted these

congressional and judicial views and generally refused to

substitute its own judgment for that of the mature, experienced,

and capable judges that sit on the various Courts of Criminal

Appeals.  See United States v. Cook, 46 MJ 37, 39 (1997); United

States v. Hawes, 51 MJ 258, 260 (1997); Eversole, supra at 138-

140 (Crawford, C.J., dissenting).  We overturn a sentence

reassessment decision by a Court of Criminal Appeals only "to

prevent obvious miscarriages of justice or abuses of

discretion."  United States v. Jones, 39 MJ 315, 317 (CMA 1994);

see Eversole, supra at 138 (Crawford, C.J., dissenting); United

States v. Cook, 48 MJ 434, 438 (1998); Boone, supra.  In this

case, the Court of Criminal Appeals failed to use the correct

5

standard for reassessing a sentence after finding an error of constitutional proportion.

The majority finds that the Court of Criminal Appeals abused its discretion by reassessing a sentence based on an inadequate record, and avoids the issue concerning application of the correct standard for reassessment. Even so, the proper disposition is to remand this case to the Court of Criminal Appeals, as we have no fact-finding power or responsibility to find facts.

In reaching its conclusion, the majority apparently relies on the sworn declaration of Dr. Brittain, a retired naval Medical Service Corps clinical psychologist and neuropsychologist. ___ MJ at (6). Although neither a medical doctor nor psychiatrist, Dr. Brittain recounts what he views as "22 different (and sometimes contradictory) psychiatric diagnoses just from the records which [he] reviewed." Dr. Brittain's sworn declaration was never before the Court of Criminal Appeals.

The Court of Criminal Appeals has the full capability to order appellant's medical records, in their entirety, to be provided to that court for review by counsel, as well as the judges. See Art. 47(a)(1), UCMJ, 10 USC § 847(a)(1); Art. 66(c); United States v. Lewis, 42 MJ 1 (1995). If additional oral argument is warranted, the court can order it. If other

6

sworn declarations beyond that of Dr. Brittain are required, the lower court can order them.  See Lewis, supra; see generally United States v. Ginn, 47 MJ 236 (1997).

Similar to what the Supreme Court found in Jackson, any court-martial convened for the purpose of resentencing appellant will have to make its sentence determination on the basis of whatever portions of the verbatim record that trial counsel and the judge give the court-martial, along with any new evidence counsel might wish to submit.  While returning this case to the Court of Criminal Appeals might "merely substitute one group of nonparticipants in the original trial for another," 353 U.S. at 580, it is my firm belief, as reflected by the Supreme Court, that Congress intended that boards of review, the forerunners of today's Courts of Criminal Appeals, would have the first opportunity to reassess court-martial sentences, using guidance from this Court.[*]  The fact that the Court of Criminal Appeals misapplied the standard of review in this case does not mean that a remand to that court for additional review is improper. As we said in Miller, returning the case directly to the trial level is "cumbersome."  10 USCMA at 299, 27 CMR at 373.  Such

---

[*] A quick comparison of recent cases from this Court shows an  "I know it when I see it" approach to sentence reassessment following reversal of a Court of Criminal Appeals decision.  Compare United States v. Ayers, 54 MJ 85 (2000), and United States v. McElhaney, 54 MJ 120 (2000), with United States v. Tollinchi, 54 MJ 80 (2000), and United States v. Brown, 55 MJ 375 (2001); compare also United States v. Johnson, 54 MJ 67 (2000), with United States v. Vasquez, 54 MJ 303 (2001).

action also unnecessarily abridges the Court of Criminal Appeals's discretion, fails to make use of that court's expertise, and certainly runs counter to congressional intent. See generally United States v. Vasquez, 54 MJ 303, 306 (2001)(Crawford, C.J., concurring in part and dissenting in part).

The issue is not whether this Court and the Court of Criminal Appeals have the power or authority to order a sentence rehearing. Both clearly have that power. See Jackson, supra; United States v. Sills, 56 MJ 239, 240 (2002); Miller, supra. If the lower court is unable to cure the error through its sentence reassessment, that court will return the case for a sentence rehearing by a court-martial, albeit not the same court that initially heard evidence and rendered findings and a sentence. See Jackson, supra at 579 ("A court-martial has neither continuity nor situs and often sits to hear only a single case.").

Accordingly, I would return this case to the Judge Advocate General of the Navy for remand to the United States Navy-Marine Corps Court of Criminal Appeals for action consistent with this opinion.

United States v. Doss, No. 01-0686/NA

SULLIVAN, Senior Judge (dissenting):

Appellant was convicted of three serious crimes:  assaulting his wife with a loaded firearm, assault and battery on his wife, and soliciting another to murder his wife.  The Court of Criminal Appeals found that 19 pages of medical records should have been given to the sentencing authority at trial and found error.[*]

The Court of Criminal Appeals looked at the missing medical records and commented on this situation as follows:

> These records demonstrate a documented history of stress, suicide ideation, and mental health hospitalizations, commencing in the spring of 1997 and continuing through the date of trial.  The objective diagnoses of the various mental health professionals who attended the appellant could not have but considerably bolstered the appellant's self-serving unsworn statement.  We are confident that, but for this error, the military judge would have adjudged a lesser punishment.  Accordingly, we will reassess the sentence.

Unpub. op. at 14-15.

The court below then applied our decision in United States v. Jones, 39 MJ 315 (CMA 1994), on reassessment and said:

> In reassessing the sentence we have carefully reviewed the record.  In doing

---

[*] I continue to voice my disagreement with the majority's understanding and use of the doctrine of law of case with respect to the scope of our appellate review.  See United States v. Hall, 56 MJ 432, 437 (2002) (Sullivan, S.J., concurring in part and in the result); United States v. Walker, No. 01-0762, __ MJ __ (2002)(Sullivan, S.J., joined by Crawford, C.J., dissenting).

        so, we paid particular attention to the
        testimony of [Marsha Sue] Williams in
        aggravation, the appellant's unsworn
        statement, the appellant's awards and
        excellent evaluations (prior to 1997),
        and the medical records submitted to the
        convening authority pursuant to RCM 1106.

        In assessing the nature and
        seriousness of the offense, we first
        emphasize that in addition to the facts
        of the solicitation, the appellant
        pleaded guilty to assault with a firearm.
        While the bulk of trial was devoted to
        the solicitation, the appellant did plead
        guilty to the earlier assaults upon his
        wife.  The circumstances of these
        assaults set forth a very chilling
        scenario in which Williams was terrorized
        with a rifle pointed at her in close
        proximity on four separate occasions and
        on a fifth occasion from a greater
        distance.  On at least the first four
        occasions, the rifle was purposefully
        loaded just prior to the assaultive
        behavior.


        Given the dread Williams must have
        experienced throughout her ordeal,
        coupled with the appellant's additional
        guilt of the solicitation for Williams'
        murder, and after carefully considering
        the "character of the offender," we are
        certain that the appellant's sentence
        would have been at least of a certain
        magnitude.  We reassess the sentence that
        would have been adjusted free of the
        prejudicial error of the failure to
        introduce the appellant's medical records
        at his court-martial.


Unpub. op. at 15-16  (emphasis added)(footnote ommited).


    I see no legal error by the Court of Criminal Appeals in its

reassessment and reduction of appellant's sentence from eight to

United States v. Doss, No. 01-0686/NA

seven years confinement.  See United States v. Boone, 42 MJ 308,
314 (1995) (Sullivan, C.J., dissenting) (Court of Criminal
Appeals "adequately addressed the issue of effective assistance
of counsel").  I am not inclined to upset its considered judgment
based on speculation.